In the
# United States Court of Appeals
### For the Seventh Circuit

No. 25-2251

SUNCO INTERNATIONAL INC.,

*Plaintiff-Appellee,*

*v.*

JIANGSU SUNCO BOILER CO., LTD., *et al.,*

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 22-cv-03818 — **Franklin U. Valderrama**, *Judge.*

ARGUED APRIL 9, 2026 — DECIDED AUGUST 13, 2026

Before EASTERBROOK, RIPPLE, and LEE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Sunco International began as a joint venture between Jiangsu Sunco Boiler (which we call "Jiangsu" to avoid confusion with the plaintiff), a Chinese company that manufactures and sells industrial boilers, and Jiefeng Shan, an engineer who designs emissions-reducing technology. According to the complaint, the venture was designed to introduce Jiangsu's products into new markets while offering Shan's technology as a solution for reducing their emissions. Jiangsu contributed cash to the venture while

Shan offered intellectual property, in the form of patents and trade secrets, and his services as a manager. In exchange, Jiangsu acquired 51% of the new company's shares and appointed one of its executives as a director, while Shan acquired 40% and became a director himself. Yudong Xu (whose relation to the others is unclear) purchased the remaining shares and took the last seat on the board of directors. Shan possesses 45% of the voting power on that board; Jiangsu's director possesses the same; and Yudong Xu holds the remaining 10%.

Relations between Shan and Sunco's other managers eventually soured. When that happened, Sunco sued Jiangsu, the directors it appointed, and others for misappropriating its trade secrets and breaching their fiduciary duties. The complaint invoked the federal-question (28 U.S.C. §1331) and supplemental (28 U.S.C. §1367) jurisdictions, and, alternatively, the diversity jurisdiction (28 U.S.C. §1332). Some of the original defendants were dismissed for lack of personal jurisdiction. Jiangsu moved to compel arbitration, and the district judge denied its motion. It now appeals that denial under 9 U.S.C. §16(a). The parties do not contest the propriety of derivative litigation.

Jiangsu argues that Sunco must arbitrate with it because of a clause in the joint venture agreement requiring signatories to arbitrate all disputes "arising from the execution of or in connection with" the agreement. Beyond providing for arbitration, the agreement lays out each party's expected contribution to the corporation once it is formed (whether intellectual property or capital) and its structure and governance. Importantly, though, Sunco didn't exist at the time the contract was formed and (to the best of our knowledge) never became a party; only Shan, Yudong Xu, and Jiangsu signed it. That

matters because Sunco is the only plaintiff. (We discuss below why this is so.)

Because Sunco is not a party to the joint venture agreement, Jiangsu invokes the doctrine of "direct benefits estoppel", under which nonparties who receive "direct benefits" from a contract containing an arbitration clause become bound to the arbitration clause. It says that Sunco received benefits from the joint venture agreement (largely in the form of intellectual property) and therefore must arbitrate disputes "in connection with" it or arising from its execution. The parties agree that Illinois law governs the dispute but disagree over whether Illinois's courts have recognized "direct benefits estoppel" as a basis for enforcing arbitration agreements. (As we hold today in *Kim v. Jump Trading, LLC*, No. 25-1964 (7th Cir.), the parties' agreement that state law controls is sound.)

Additionally, Jiangsu argues that Sunco's claims fall within the scope, or subject matter, of the arbitration clause. The clause encompasses all disputes arising in connection with the agreement, and the agreement spells out what the assets of the corporation will be and how it will be governed. Sunco's claims focus on the misappropriation of these assets and the breach of fiduciary duties that the defendants, as controlling shareholders and directors, acquired as a result of the agreement. According to Jiangsu, this means that the claims have arisen "in connection with" the agreement and thus fall within the scope of the arbitration clause.

Because we do not think the arbitration clause binds Sunco, we address only the first argument. But before turning to the merits, we must pin down the litigants' identities. The complaint lists two plaintiffs: Sunco International and Jiefeng Shan. Yet it also bills the suit as a derivative action, filed by Shan on behalf of Sunco. This is a problem, for two reasons.

First, shareholders of Illinois corporations cannot themselves be plaintiffs in derivative actions. *Zokoych v. Spalding*, 36 Ill. App. 3d 654, 663 (1976). Rather, they litigate on behalf of the corporation, and any recovery goes to the corporation (of which the shareholders are beneficiaries). Shareholders can themselves be parties in corporate litigation only when they suffer direct, individual harms, rather than those affecting all shareholders—hence the distinction between direct and derivative suits. *Ibid*. This case is different from many derivative actions because Shan is the only shareholder who is not a defendant (though this may often be the case in derivative litigation by closely held corporations). That, however, does not change the fact that the complaint asserts grievances on behalf of the corporation, not Shan himself. And because Shan does not assert any rights as a shareholder directly, he cannot be a plaintiff. See *Small v. Sussman*, 306 Ill. App. 3d 639, 643–44 (1999).

There is another reason why Shan cannot be a party: he signed the joint venture agreement and therefore must arbitrate any claims he has against Jiangsu. This problem could have been solved easily through an amendment to the complaint dropping Shan as a party, since he does not appear to assert any direct or individual claims. Indeed, Shan's lawyer confirmed at oral argument that Shan is bringing the suit on behalf of the corporation and not himself. Therefore, we treat Sunco as the sole plaintiff and Shan as its representative.

With that confusion out of the way, we can address whether Sunco must arbitrate its claims against defendants.

Arbitration is a matter of contract, and the general rule is that nonparties to arbitration agreements can neither be bound to them nor benefit from them. *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1019 (7th Cir. 2024). Still, equitable

doctrines may permit third parties to enforce arbitration agreements governed by Chapter 1 of the Federal Arbitration Act ("the Act"). This is because courts are supposed to treat arbitration agreements as they would other contracts, which, under state law, may sometimes bind nonparties. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). To determine the content of Illinois's rule, we look to decisions of both the state's highest court and its intermediate appellate courts, treating the former as authoritative and giving substantial weight to the latter. *Allstate Insurance Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002).

In Illinois, a person may become bound by a contract through estoppel when he causes others to believe he is bound by it and to rely on that belief detrimentally. *Dill v. Widman*, 413 Ill. 448, 455–56 (1952). Take *Dill* as an example. A wife agreed to give up a share of her husband's estate, guaranteed to her by statute, in exchange for a conveyance of land. The wife's acceptance caused the husband to deed her the land and thereby removed it from his estate. At probate, the wife was estopped from denying the validity of the agreement with her husband and asserting her right to the statutory share, for he acted detrimentally in reliance on their agreement. Another example arises in disputes about liability insurance coverage. By defending an insured in a lawsuit without reserving a right to deny coverage, an insurer may lead him to believe that the conduct for which he is being sued is covered by the liability insurance policy. The insurer would then be estopped from denying coverage, so long as its conduct caused the insured to act to his detriment. See *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 195–96 (1976).

Jiangsu argues that Sunco is estopped from denying that it is bound by the joint venture agreement's arbitration clause. It says that Sunco received certain benefits from the

agreement, such as trade secrets, and therefore must comply with all its provisions—taking the bitter with the sweet, as it were. But Jiangsu does not purport to have relied on acts or representations by Sunco suggesting that it was bound to the joint venture agreement—which, in Illinois, is an essential element of estoppel. *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 514–16 (2004). Nor could it make that showing. The joint venture agreement provides that a board of shareholders and a board of directors will govern the corporation; together, the defendants in this case form a majority on both boards. Given that they control Sunco and its actions, it is hard to see how Sunco could lead them to believe that it was bound by the arbitration clause. We can see how actions by one of its agents might convince an outsider that Sunco would arbitrate, just as an insurance company's agents might convince an insured that the insurer will cover his liability. But we do not see how Sunco's managers could induce detrimental reliance in themselves.

Ignoring *Ervin* (perhaps because it knows it is missing a critical element of its test), Jiangsu points to a few Illinois cases that have entertained arguments based on "direct benefits estoppel"—a cognate of equitable estoppel that federal courts developed without any reference to Illinois law and that does not seem to have a reliance requirement. See, e.g., *In re Estate of Dukes*, 2025 IL App (5th) 240645, ¶22 (citing *Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380, 383–84 (7th Cir. 2014)); *Peterson v. Devita*, 2023 IL App (1st) 230356, ¶46; *American Economy Insurance Co. v. Accelerated Rehabilitation Centers, Ltd.*, 2022 IL App (1st) 211410-U, ¶¶ 24–27; *Snyder v. Jack Schmitt Ford, Inc.*, 2022 IL App (5th) 210413-U, ¶¶ 38–49 (citing, e.g., *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001) and *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411,

418 (4th Cir. 2000)). The fact that federal courts developed the doctrine of "direct benefits estoppel" raises an initial question: from where did those courts draw it? The Supreme Court had held that "state law, whether of legislative or judicial origin, is applicable [to disputes about arbitration agreements] *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987) (emphasis in original). Yet none of the federal appellate decisions applying "direct benefits estoppel" cites state law. Instead, they cite other federal cases and purport to apply "ordinary principles" of contract law. See *Everett*, 771 F.3d at 383; *MAG Portfolio Consult*, 268 F.3d at 61; *International Paper*, 206 F.3d at 417 n.4, 418. Perhaps those courts thought that they were developing a federal rule of equitable estoppel, but, even then, they would have needed to resort to state law to define that rule. See *Kimbell Foods*, 440 U.S. at 728–29. Calling a rule an ordinary principle of contract law doesn't make it so; one must show that state courts apply it.

Another problem for Jiangsu is that none of the Illinois cases it cites has endorsed direct benefits estoppel or held that it can be a basis for enforcing an arbitration agreement against a nonsignatory. See *Estate of Dukes*, 2025 IL App (5th) 240645, ¶23 (Supreme Court of Illinois does not recognize "that a nonsignatory may be bound to a contract under the doctrine of direct benefits estoppel"); *American Economy Insurance*, 2022 IL App (1st) 211410-U, ¶24 n.4 (same); *Peterson*, 2023 IL App (1st) 230356, ¶46 (applying but not adopting direct benefits estoppel and describing it as a "theory applied in some federal court cases"); *Snyder*, 2022 IL App (5th) 210413-U, ¶¶ 48–49 (Supreme Court of Illinois has continued to "rely on a definition of equitable estoppel" with reliance requirement). What's more, other cases have forsworn it, emphasizing that

Illinois's doctrine of estoppel requires detrimental reliance. See *Ervin*, 349 Ill. App. 3d at 514–16 ("declin[ing] to follow federal decisions that adopt this expanded interpretation of equitable estoppel").

One has even held that estoppel can never bind third parties to an arbitration agreement. See *Schultz v. Sinav Limited*, 2024 IL App (4th) 230366, ¶146 (citing the Supreme Court of Illinois's opinion in *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶55). While *Schultz*'s conclusion didn't have much reasoning, it is possible to read the case as holding that under Illinois's law of contracts, equitable estoppel's role is evidentiary. It can rebut a defense that a bargain one party seeks to enforce never occurred (as the widow in *Dill* might have asserted), that it is void or voidable (see *Grot v. First Bank of Schaumburg*, 292 Ill. App. 3d 88, 93–94 (1997)), or that the parties never intended it to cover the subject in question (as an insurance company might say). But it cannot be used to create contractual obligations when *everyone agrees* that a bargain has not occurred, nor can it serve to impose the obligations from an indisputably bilateral contract on a third party. This reading of *Schultz* puts it in harmony with *Ervin*, which requires that the party being estopped lead another to think it is bound by a contract between them. That requirement is not met when no one ever believes that the person being estopped is a party.

Ultimately, it doesn't matter which case we take as the most authoritative exposition of Illinois law. What's clear is that none embraces the position defendants ask us to employ. And even if those courts did embrace "direct benefits estoppel", this would be an odd situation in which to apply it. It is one thing to say that a party who benefits from a provision in a contract must accept those that work to its detriment. But Sunco wasn't the real beneficiary of the joint venture

agreement; its shareholders were. After all, corporations exist for the benefit of their investors; they do not have an independent interest in existing. *Lake Shore & Michigan Southern Railway Co. v. Chicago and Western Indiana Railroad Co.*, 97 Ill. 506, 524 (1881). Jiangsu owns a majority stake in Sunco. If anyone benefitted from Sunco's formation and assets, it was the shareholders—Jiangsu, Shan, and Xu—and not the corporation itself. It doesn't make sense to compel Sunco to arbitrate based on benefits its investors received.

Finally, Jiangsu argues that another provision of the contract indicates an intent by the parties to bind Sunco. An English translation of the provision tells us that

> [a]fter the incorporation of the Company, each party shall annotate this agreement to confirm that the Company is governed by this agreement. However, if it is not annotated, the effectiveness of this Agreement on the Company shall not be affected.

This provision is not easy to parse but seems to contemplate that the corporation will become a party to the agreement once it is formed. The corporation was formed, but we do not know whether it adopted the agreement. Jiangsu does not argue that this clause itself made Sunco a party. Rather, it says that the clause manifests an "intent" to arbitrate that is relevant to our equitable estoppel analysis.

We struggle to see how. Whether the directors wanted the corporation to be bound before they formed it is irrelevant. It tells us nothing about whether the corporation adopted the contract (which Jiangsu, as the majority owner, could have done), and thus became bound, nor about any other conduct the corporation undertook when it was formed, which is what matters for Illinois's doctrine of equitable estoppel. See *New Illinois Athletic Club v. Genslinger*, 211 Ill. App. 220, 232 (1918) ("a contract made with a promoter of a corporation before its

organization is not enforceable against the corporation unless such contract is ratified by the corporation after its organization.")

Jiangsu also urges that the corporation should be bound because it is "so closely related" to the subject matter of the agreement that it must have "foresee[n]" being covered by it. It draws this argument from *Solargenix Energy, LLC v. Acciona, S.A.*, which held that a company was bound to a forum-selection clause after its agents negotiated and its subsidiaries signed the agreement containing it. 2014 IL App (1st) 123403, ¶47. But Sunco didn't exist when the parties entered the joint venture agreement; it therefore could not have had any role in negotiating the agreement or any expectations about its consequences. At the time it had no agents, subsidiaries, or foresight. Thus, none of the conditions that justified extending the forum-selection clause to the company in *Solargenix* exists here.

Our reasoning is simple. Sunco is not a party to the contract. Jiangsu says that it is still bound to the contract's arbitration provision because of equitable estoppel. But detrimental reliance is an essential element of equitable estoppel in Illinois, and there is no detrimental reliance here. This means that Sunco is not bound to the agreement's arbitration clause. And because it isn't bound, we need not address whether its claims fall within that clause's scope.

AFFIRMED